35 F.3d 1073
 39 ERC 1833, 24 Envtl. L. Rep. 21,490
 FRIENDS OF the CRYSTAL RIVER, a Michigan non-profit
corporation; National Wildlife Federation, a
District of Columbia non-profit
corporation, et al.,
Plaintiffs-Appellees,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an Agency of
the Federal Government; William K. Reilly,
Administrator, U.S. Environmental
Protection Agency, et al.
(92-1979),
Defendants-
Appellants,
Roland Harmes, Director, Michigan Department of Natural
Resources (92-1983), Defendant-Appellant,
Kuras Properties, Inc., Intervenor.
 Nos. 92-1979, 92-1983.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 2, 1993.
Decided Sept. 21, 1994.
 
 M. Carol Bambery, Michigan United Conservation Clubs, Lansing, MI, Thomas A. Baird, Okemos, MI, Robert G. Dreher, Sierra Club Legal Defense Fund, Washington, DC (argued and briefed), James Mark Olson, John D. Noonan, Rosi, Olsen & Levine, Traverse City, MI, Eleanor K. Roemer, Chicago, IL, Mark C. VanPutten, Ann Arbor, MI, John E. Grenke, Monaghan, LoPrete, McDonald, Yakima & Grenke, Bloomfield Hills, MI, for Friends of Crystal River, National Wildlife Federation, Michigan United Conservation Clubs, Inc., Michigan Council of Trout Unlimited, Lake Michigan Federation, Sierra Club and Izaak Walton League of America, Indiana Div.
 David J. Kaplan, U.S. Dept. of Justice, Land & Natural Resources Div., Catherine A. Winer, E.P.A., David C. Shilton (argued and briefed), Dirk D. Snel, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, DC, Daniel M. LaVille, Office of U.S. Atty., Grand Rapids, MI, for U.S.E.P.A., William K. Reilly, and LaJuana S. Wilcher.
 Stephen M. Rideout, Office of Atty. Gen., Natural Resources Div. (argued and briefed), Thomas J. Emery, Office of Atty. Gen., Michigan Liquor Control Com'n, Lansing, MI, for Roland Harmes.
 Gregory L. McClellan (briefed), Michael S. Aashton, Dickinson, Wright, Moon, Van Dusen & Freeman, Lansing, MI, for Michigan Ass'n of Home Builders, amicus curiae.
 Before: LIVELY, JONES, and MILBURN, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Defendants-Appellants United States Environmental Protection Agency ("EPA") and Roland Harmes, appeal the district court's grant of a permanent injunction and declaratory relief to Plaintiffs-Appellees, Friends of the Crystal River, et al. For the reasons stated herein, we AFFIRM the district court's decision.
 
 I.
 A.
 
 2
 The Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. Secs. 1251-1376, enacted in 1972, constituted a reconstruction of America's water pollution laws. Pursuant to the FWPCA, the discharge of pollutants into our nation's waterways is prohibited unless authorized by a permit or exempted by the specific statutory language.
 
 
 3
 The Act establishes two discrete permitting systems by which individuals might obtain permits from the appropriate federal agency allowing dumping in waterways. The first, which is known as the National Pollutant Discharge Elimination System ("NPDES"), governs the discharge of pollutants from specific sites, known as point sources, see Sec. 402 of the FWPCA, 33 U.S.C. Sec. 1342, and most typically affects industry sources. The second permitting scheme, which operates under the Secretary of the Army via the Army Corps of Engineers, regulates the release of dredged and fill matter into waterways, including wetlands. See Sec. 404 of the FWPCA, 33 U.S.C. Sec. 1344. The two permitting systems are commonly referred to as "the Sec. 402 system" and "the Sec. 404 system," respectively. The instant case concerns a permit granted pursuant to Sec. 404.
 
 
 4
 States are authorized to supplant the first federal permitting scheme, the NPDES scheme, pursuant to various provisions of the FWPCA. Additionally, the Clean Water Act of 1977, ("CWA"), passed in 1977, which strengthened the FWPCA by adding additional protections, provides a similar authority to the states with respect to Sec. 404 permits. As is relevant to the instant suit, Michigan has adopted its own Sec. 404 system, while leaving the authority over NPDES permits to the federal government.
 
 
 5
 Under Sec. 404 a state may establish its own permitting system by complying with the process enumerated therein.[1] Limited federal oversight authority is retained even after the state's acquisition of permitting control.[2] Pursuant to this retained oversight authority, a state is required to present to the EPA copies of all permit applications which are submitted to the state for approval. In addition, the state must notify the EPA of any action that it takes with respect to such applications. Sec. 1344(j). The EPA Administrator must, within 10 days, provide copies of the application to the Army Corps, the Department of the Interior, and the Fish and Wildlife Service. The state must be notified within thirty days if the Administrator intends to comment on the state's handling of the application. Id. The administrator's comments must be submitted within ninety days. Id.
 
 
 6
 Once a state is notified that the EPA intends to comment, it may not issue the permit until after it has received the comment, or until ninety days have passed. If the EPA objects to the application, the state "shall not issue such proposed permit" even after the ninety days have elapsed. Id. The aggrieved state may request a hearing to air its complaints. However, if the state does not request a hearing, or if it fails to modify its plan so as to conform to the EPA's objections, authority to issue the permit is transferred to the Army Corps.[3]B.
 
 
 7
 The Homestead Resort is a recreational facility in Glen Arbor Township, Michigan, that occupies roughly 492 acres of land. The resort is in close proximity to the Sleeping Bear Dunes National Lakeshore, which is administered by the National Park Service.
 
 
 8
 In January 1988, Kuras Properties, the owner of the Resort, filed a combined state and federal application for a Sec. 404 permit with the Michigan Department of Natural Resources ("MDNR"). Kuras had plans to build an eighteen-hole golf course on its resort. However, this planned expansion required the filling of some 3.7 acres of the wetlands adjacent to the Crystal River.
 
 
 9
 The EPA notified the MDNR that it intended to review the Kuras application pursuant to its retained oversight authority. See J.A. at 94. The three relevant entities--the Army Corps, the Fish and Wildlife Service, and the Department of the Interior--were all notified of the Kuras' proposal and sent letters to the EPA voicing their opposition to the application. On July 7, 1988, the EPA informed the MDNR that it objected to the proposed permit due to the potentially significant and adverse impact that the proposal might have on the surrounding environment.[4] In addition, the EPA indicated that it did not believe Kuras has adequately investigated the availability of alternative locations. The MDNR then denied Kuras' permit application.
 
 
 10
 In October 1988, Kuras filed an amended application, wherein it indicated that alternative locations for the proposed project were not feasible. Kuras then, in state court, challenged the denial of its first application. On February 17, 1989, the MDNR denied Kuras' second permit application.
 
 
 11
 Kuras ultimately reached an agreement with the State to make the necessary changes in its proposal. However, before a consent judgment could be entered, the Michigan United Conservation Clubs filed suit in state court to prevent the issuance of the permit. See Michigan United Conservation Clubs v. Kuras Properties, et al., No. 89-63221 (Mich. Cir. Ct. for Ingham Cty.1989). The court found that the state was required to hold an administrative hearing before a permit could be issued. This was done in September 1989, and on August 27, 1990, the ALJ issued a report recommending approval of the application, provided that certain conditions were first met. The Michigan Natural Resources Council ("MNRC") adopted the ALJ's recommendation in November 1990.
 
 
 12
 Despite the MNRC's indicated approval, the EPA notified the state that it remained opposed to the issuance of the permit. The EPA stated that the MDNR had "neither satisfied USEPA's objections nor denied the permit. Therefore, pursuant to Federal Regulations concerning State Program assumption (40 C.F.R. Part 233.50(j)), we have transferred the processing of this permit to the U.S. Army Corps of Engineers, Detroit District." J.A. at 116.[5]
 
 
 13
 In early 1991, Michigan Governor John Engler asked the EPA Administrator William Reilly to review the EPA's consideration of the case. Reilly then asked the governing region, Region V, to attempt to facilitate an accord with the state. However, despite attempts at compromise, the Region concluded that the proposed permit did not satisfy federal standards. The Administrator then, on April 16, 1992, withdrew the region's authority to oversee the issuance of the permit, and endowed the EPA's Assistant Administrator of Water, LaJuana S. Wilcher, with management discretion.[6]
 
 
 14
 Wilcher, on May 8, 1992, withdrew the EPA's earlier objections to the Kuras plan in an eighteen-page document entitled "Decision Document: Conditional Withdrawal of EPA Objection to Michigan Issuance of a State Wetlands Permit for Homestead Resort." J.A. at 202-36 (including appendices). In this document, the Assistant Administrator allegedly returned permitting authority to Michigan, stating:
 
 
 15
 [I]t is clear that EPA may be able to withdraw an objection if it later concludes the objection is no longer necessary. In addition, where, as here, the only pending application is before the State (the corps is not processing a permit because Kuras has not submitted an application to it), it is appropriate for the State to complete its permitting process once the objection is withdrawn.
 
 
 16
 J.A. at 206. This alleged revesting of authority in the State occurred roughly a year and a half after the MDNR had first been notified that authority had been transferred to the Army Corps.
 
 
 17
 In the instant case, five environmental groups[7] brought suit challenging the EPA's restoration of state control.[8] The three grounds for the suit were: (1) the EPA lacked the statutory authority to withdraw its objections and restore state control; (2) the EPA acted arbitrarily and capriciously; and (3) the issuance of the permit by the state director would constitute a violation of the CWA.
 
 
 18
 The district court issued a temporary injunction pending its resolution of the case. On June 9, 1992, the district court entered judgment for the plaintiffs on counts one and three. See Friends of the Crystal River v. United States Environmental Protection Agency, 794 F.Supp. 674 (W.D. Mich.1992). In so holding, the district court determined that the statute did not prevent judicial review of the EPA's action. Moreover, the district court concluded that, after the ninety-day deadline had elapsed, the EPA lacked the authority to withdraw its objections, to revoke the Army Corps' management authority, or to restore permitting authority in the state. A permanent injunction was therefore issued by the district court precluding the issuance of the permit by the MDNR. This appeal followed.
 
 II.
 A.
 
 19
 The first issue before us is whether the Clean Water Act precludes judicial review of the EPA's withdrawal of its objections. Judicial review is provided for by various provisions of the Federal Water Pollution Control Act, as amended by the CWA.[9] However, Plaintiffs have not asserted jurisdiction under any of these sections. Rather, Plaintiffs claim general federal question jurisdiction under both the general federal question statute and 28 U.S.C. Secs. 1361, 2201-02.[10]
 
 
 20
 We apply a de novo standard of review to questions of subject matter jurisdiction. Greater Detroit Resource Recovery Auth. v. United States Environmental Protection Agency, 916 F.2d 317, 319 (6th Cir.1990). In applying this standard, we note that the Administrative Procedure Act ("APA") imposes a presumption in favor of judicial review. Block v. Community Nutrition Inst., 467 U.S. 340, 348-49, 104 S.Ct. 2450, 2455-56, 81 L.Ed.2d 270 (1984). However, this presumption will be overcome by clear and convincing evidence that Congress intended to preclude such review. Abbott Labs. v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). To the extent that a party wishes to preclude judicial review, the Supreme Court has instructed that that party will bear a "heavy burden." Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 671-72, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986). Thus, "where substantial doubt about the congressional intent [to preclude review] exists, the general presumption favoring judicial review of administrative action is controlling." Block, 467 U.S. at 351, 104 S.Ct. at 2456-57.
 
 
 21
 The APA instructs that any person detrimentally affected by an agency decision is entitled to judicial review of that decision. See 5 U.S.C. Sec. 702. However, such review is not afforded in cases where (1) the statute precludes review; or (2) the action complained of has been committed to agency discretion. See 5 U.S.C. Sec. 701(a).
 
 
 22
 In the instant case, the EPA argues that the CWA "precludes judicial review of interlocutory determinations made prior to ultimate issuance of the permit." Federal Appellants' Br. at 20. In reviewing the EPA's assertion, we first look to the language of the statute. Block, 467 U.S. at 351, 104 S.Ct. at 2456-57 (instructing that the statute's language, structure, objectives, and legislative history should be considered in determining whether judicial review is precluded). However, where the language of neither the FWPCA nor the CWA specifically grants nor precludes judicial review of the EPA's decision to withdraw its objections, we must further consider the structure, objective, and legislative history of the statutes. Id.
 
 
 23
 Congress has indicated that one purpose of the FWPCA is "to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution...." 33 U.S.C. Sec. 1251(b). However, when enacting the 1977 amendments to the FWPCA, legislators noted that the "EPA has been much too hesitant to take any actions where States have approved permit programs. The result might well be the creation of 'pollution havens' in some of those States which have approved permit programs." S.Rep. No. 95-370, 95th Cong., 1st Sess. 73 (1977), reprinted in 1977 U.S.C.C.A.N. 4326, 4398. Thus, while the purpose of both the 1972 and 1977 Acts may have been to encourage states to assume a portion of the burden of pollution management, the 1977 amendments make equally clear that Congress also intended to expand federal oversight.
 
 
 24
 The EPA urges this court to consider pertinent case law before reaching a final decision on the issue. Specifically, the EPA points to the following cases in support of its proposition that the instant EPA action is not reviewable: District of Columbia v. Schramm, 631 F.2d 854 (D.C.Cir.1980) (finding that Administrator's decision not to object to NPDES permit was unreviewable agency action); American Paper Inst. v. United States Environmental Protection Agency, 890 F.2d 869 (7th Cir.1989) (finding that EPA's decision to object was non-reviewable agency action as it was not included among reviewable categories listed in 33 U.S.C. Sec. 1369(b)); and Champion Int'l Corp. v. United States Environmental Protection Agency, 850 F.2d 182 (4th Cir.1988) (finding that EPA's unsatisfied objections are not final agency actions, and thus are not reviewable).
 
 
 25
 The plaintiffs respond, first, by stressing the substantial evidentiary hurdle Defendants must overcome before they will rebut the presumption of reviewability. In addition, Plaintiffs note that three circuits have found that some federal review of state-issued NPDES permits is legitimate. For example, in Save the Bay, Inc. v. Administrator of EPA, 556 F.2d 1282, 1295-96 (5th Cir.1977), the court suggested that the EPA's failure to object to a state permit would be reviewable in federal court if there were some allegation that the EPA had not acted in conformity with its own guidelines. Similarly, in Central Hudson Gas & Elec. Corp. v. United States Environmental Protection Agency, 587 F.2d 549 (2d Cir.1978), the court allowed for immediate review of an EPA action where the EPA was allegedly acting outside of its statutory authority when it continued to issue permits even after New York's permitting program had been approved.
 
 
 26
 We find that the cases cited by the parties do not conflict with each other. Rather, the basic principles espoused are readily harmonized. The cases cited by the defendants stand for the broad proposition that an EPA decision to object does not constitute final agency action, while a decision not to object is within the sole discretion of the agency. Accordingly, neither action may be subjected to judicial review.[11]
 
 
 27
 Also bearing upon the present case is the implication noted in Central Hudson that, unlike the situations discussed above, there may be situations in which judicial review will be appropriate. Such a situation is presented here. We find that the transfer of permitting authority back to the state was a non-discretionary act.[12] Moreover, the EPA's withdrawal of its objections is a final decision that, if unreviewed, will terminate the federal government's role in this case. Thus, where, as here, the court is faced with a final, non-discretionary agency act, we conclude that review is appropriate.
 
 
 28
 The EPA further argues that state courts are competent to hear the federal issues, and thus should not be precluded from considering the same. However, we find that the mere existence of an alternative forum does not, without more, demonstrate a congressional intent to preclude federal judicial review. Logic dictates that though the federal and state courts share concurrent jurisdiction over a broad host of claims under federal statutory law, the mere existence of such concurrent jurisdiction does not per se rescind all federal authority over such cases. Moreover, though Congress may have intended to vest significant authority in the states via the FWPCA, the 1977 amendments to that same statute indicate Congress' desire to insure that the EPA properly discharges its oversight duties. Consequently, where the EPA has allegedly abandoned its supervisory role, and has, at the same time, revoked the authority of another federal agency to exercise the same, we cannot find that Congress intended to foreclose review by the federal courts.[13]
 
 B.
 
 29
 The next issue we must address is whether the EPA exceeded its authority by attempting to return permitting authority to Michigan after such authority had been transferred to the Army Corps.
 
 
 30
 Section 1344(j) provides that where a state fails to amend its proposed permit to conform to EPA objections, "the Secretary [of the Army, acting through the Army Corps,] may issue the permit." 33 U.S.C. Sec. 1344(j). The EPA's own regulations present a more absolute interpretation of the transfer of authority, stating that "the Secretary shall process the permit application" after ninety days have passed. 40 C.F.R. Sec. 233.50(j).
 
 
 31
 The EPA argues that because Sec. 1344(j) does not specifically preclude the EPA's withdrawal of its objections after the ninety-day period that the EPA should be allowed to transfer permitting authority back to the state once an objection has been withdrawn.
 
 
 32
 Agencies are creatures of statutory authority. Thus, they have "no power to act ... unless and until Congress confers power upon [them]." Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 374, 106 S.Ct. 1890, 1901, 90 L.Ed.2d 369 (1986). The Supreme Court has held that courts are not to assume that an agency has lost jurisdiction merely because it has not acted within a statutorily specified time limit. General Motors Corp. v. United States, 496 U.S. 530, 542, 110 S.Ct. 2528, 2534, 110 L.Ed.2d 480 (1990); Brock v. Pierce County, 476 U.S. 253, 258-62, 106 S.Ct. 1834, 1838-40, 90 L.Ed.2d 248 (1986). However, where a statute both requires the agency to act within a certain time period and specifies a consequence if that requirement is not met, the agency will lose jurisdiction to act. Cf. Fort Worth Nat'l Corp. v. Federal Sav. & Loan Ins. Corp., 469 F.2d 47, 58 (5th Cir.1972) (noting that a statutory time period is mandatory if the statute "both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision").
 
 
 33
 In the instant case, the CWA specifically provides a time limit in which a state must comply with EPA objections. A failure on the part of the state to so conform within the statutory time limit results in the transfer of authority to the Army Corps. Consequently, we conclude Congress intends to completely divest the original agency of jurisdiction, and vest authority in the Army Corps following expiration of the deadline.[14]
 
 C.
 
 34
 The final issue we must address is whether the district court had subject matter jurisdiction over the claims asserted against Defendant Roland Harmes, director of the MDNR. Harmes maintains that the court lacked jurisdiction because he was not acting as a federal agent, nor acting pursuant to federal authority in his administration of the Michigan permitting program. However, the plaintiffs have alleged a federal question. Consequently, because the case against Harmes "arises under" federal law, the district court correctly determined that it had jurisdiction to consider the claims asserted against him.
 
 III.
 
 35
 For the foregoing reasons, we affirm the district court's decision.
 
 
 
 [1]
 Sections 1344(g)-(i) instruct that the governor must first submit a description of the proposed state program to the Administrator of the EPA. The EPA then, within ten days, must provide copies of the proposal to the Army Corps, the Secretary of the Interior, and the Fish and Wildlife Service. Each of these organizations has ninety days in which to submit any commentary on the state's proposal. Sec. 1344(g). The Administrator, within 120 days, must then decide if the state's proposed plan conforms to federal guidelines. A failure on the part of the Administrator to act within 120 days will result in a presumptive endorsement of the state's plan. Sec. 1344(h). If, after a hearing, the Administrator decides that the plan does not comply with federal standards, the state must be notified. Following notification, the state's failure to act within ninety days compels the withdrawal of approval for the plan
 
 
 [2]
 Though the EPA may waive all or part of its oversight authority, such was not done with respect to Michigan's Sec. 404 permitting system. See Sec. 1344(k)
 
 
 [3]
 Specifically, the statutory language states:
 If the State does not resubmit such permit revised to meet such objection, the Secretary [of the Army, acting through the Army Corps,] may issue the permit pursuant to subsection (a) or (e) of this section, as the case may be, for such source in accordance with the guidelines and requirements of this chapter.
 Sec. 1344. If a state fails to comply with the EPA's objections under a NPDES program, the authority to issue the permit is simply returned to the EPA. See 33 U.S.C. Sec. 1342(d)(4).
 
 
 [4]
 The EPA's objections to the Kuras permit were filed roughly two months beyond the applicable ninety-day deadline. This delay is not at issue in the instant appeal, however, due to Kuras' subsequent filing of an amended application
 
 
 [5]
 Two additional letters evidencing the transfer of authority are referenced by the district court, but are not a part of the record on appeal. In one of these letters, the Army Corps confirmed its authority over the matter. In the second, the EPA confirmed that authority had been transferred, and noted that "MDNR may not issue a wetlands permit to an applicant where EPA has objected to its issuance within 90 days. Where EPA's objections have not been satisfied within certain time frames and conditions, permit issuing authority reverts to the Secretary of the Army." Friends of the Crystal River v. United States Environmental Protection Agency, 794 F.Supp. 674, 679 (W.D. Mich.1992)
 
 
 [6]
 Throughout this period, Kuras refused to submit its application to the Army Corps for consideration. Consequently, the Army Corps has never acted on the permit at issue here
 
 
 [7]
 The plaintiffs in this case are Friends of Crystal River, the National Wildlife Federation, Michigan United Conservation Clubs, Michigan Council of Trout Unlimited, and the Lake Michigan Federation
 
 
 [8]
 The named defendants in this action are the EPA, Reilly, Wilcher, and Roland Harmes, the Director of the MDNR. Kuras Properties intervened as a defendant
 
 
 [9]
 For example, the United States Courts of Appeals are granted original jurisdiction over challenges to specific acts of the EPA Administrator with respect to NPDES permitting schemes, pursuant to 33 U.S.C. Sec. 1369(b)(1). In addition, 33 U.S.C. Sec. 1365 provides for "citizen suits" challenging the Administrator's "failure ... to perform any act or duty under this chapter which is not discretionary with the Administrator."
 
 
 [10]
 Although the Supreme Court has found that the Administrative Procedure Act does not itself create jurisdiction, see Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Court has stated that the federal courts have jurisdiction under the federal question statute to review agency action "regardless of whether the APA of its own force may serve as a jurisdictional predicate." Id. at 105, 97 S.Ct. at 984
 
 
 [11]
 We note that a close reading of American Paper indicates that the court found that the decision to object is not reviewable because it is discretionary. However, we conclude that a more defensible basis for determining EPA objections to be non-reviewable lies in the fact that such decisions are non-final. For example, the EPA may, after issuing an objection, decide to (1) accept the modified state permit; (2) issue a permit on its own; or (3) deny the permit
 
 
 [12]
 The Supreme Court has held that for an agency decision to be precluded from review on the grounds that it is discretionary, the statute must be "drawn in such broad terms that in a given case there is no law to apply." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). The APA's prohibition on review of a discretionary administrative action is thus a "very narrow exception." Id. In the instant case, the transfer of authority to the Army Corps is not so discretionary that there is no law to apply. See 5 U.S.C. Sec. 701
 
 
 [13]
 In Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court found that a statutory bar to judicial review would not apply where an agency acted outside of its authority to deprive a plaintiff of his or her statutory rights. This circuit has narrowly interpreted Leedom to apply only in "extreme situations." Shawnee Coal Co. v. Andrus, 661 F.2d 1083, 1093 (6th Cir.1981). However, in light of our conclusion that judicial review is not precluded, we need not further address the district court's conclusion that this case, in the event that judicial review was precluded, would fit within the exception noted by the court in Leedom
 
 
 [14]
 The EPA argues that this conclusion fails to accord due deference to the agency's own interpretation of the statute. In Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984), the Supreme Court directed that where Congress has failed to address the precise question in issue, deference must be given to the agency's interpretation of the statutory language, provided such interpretation is based on a legitimate construction of the statute. We find the EPA's assertion to be unpersuasive for two reasons. As noted above, we conclude that the language of Sec. 1344(j), along with the legislative history indicates that Congress created a detailed procedure by which impasse between the state and the EPA might be resolved. Consequently, it is unnecessary to reach the Chevron question, in the first instance, where Congress has addressed the issue in question. Moreover, to the extent that Chevron is on point, an agency interpretation that conflicts with the agency's own prior construction is " 'entitled to considerably less deference' than a consistently held agency view." I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987) (quoting Watt v. Alaska, 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981)). Thus, in the instant case, where the EPA's present position is at odds with its earlier-held view that the Army Corps was vested with authority to oversee the permit issue, J.A. at 116, the current agency construction is not entitled to deference