**Mark Lee KRAMER, et al., Plaintiffs,**

v.

**SECRETARY OF DEFENSE,**
**Defendant.**

No. CIV.A. 96–0497 (HHK).

United States District Court,
District of Columbia.

March 25, 1999.

Daniel M. Schember, Michael J. Gaffney, Gaffney & Schember, P.C., Washington, DC, for Plaintiffs.

Claire Whitaker, Assistant United States Attorney for District of Columbia, Office of United States Attorney for District of Columbia, Washington, DC, for Defendant.

## ORDER AND JUDGMENT

KENNEDY, District Judge.

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 25th day of March 1999 hereby

ORDERED and ADJUDGED that judgment is entered in favor of the plaintiff; and further ORDERED as follows:

1. Defendant shall change the effective date of plaintiff Kramer's competitive service appointment to September 5, 1994.

2. Defendant shall change the effective date of plaintiff Jones's competitive service appointment to September 26, 1994.

3. Defendant shall change the effective date of plaintiff Findlay's competitive service appointment to May 5, 1995.

4. Defendant shall change the effective date of plaintiff Fangerow's competitive service appointment to December 21, 1993.

5. Defendant shall offer plaintiff Fangerow appointment, effective December 21, 1993, to a competitive service position for which he is qualified and for which the basic rate of pay is no less than the rate he last received for technician service before separation from technician service.

6. Defendant shall change the effective date of plaintiff Ainslie's competitive service appointment to July 31, 1995.

## MEMORANDUM OPINION

The plaintiffs, former National Guard Technicians who were involuntarily separated from their employment, have brought this action under 5 U.S.C. § 3329 (1992) to revise the effective dates of their subsequent appointments in the competitive service. One plaintiff also seeks retroactive appointment to a higher-paying position. Before the court are the defendant's motion to dismiss or for summary judgment and the plaintiffs' motion for judgment on the pleadings or for summary judgment. Upon consideration of the motions, the responses thereto, and the entire record of this case, the court concludes that plaintiffs are entitled to judgment on the pleadings.

### I. FACTUAL BACKGROUND

The following facts are undisputed. The five plaintiffs are former National Guard technicians, each with more than 15 years of individual service, who were involuntarily separated from their employment as technicians through no fault of their own. Following their respective separations, the plaintiffs submitted applications for Department of Defense ("Department") competitive service appointments pursuant to 5 U.S.C. § 3329. At the time of those applications, that statute provided in pertinent part:

> The Secretary of Defense shall take such steps as may be necessary to ensure that, except [in the case of an involuntary separation for cause on charges of misconduct or delinquency, or a tech-

nician who is eligible for immediate or early retirement], any military reserve technician who is involuntarily separated from technician service, after completing at least 15 years of such service and 20 years of service creditable under section 1332 of title 10, by reason of ceasing to satisfy the condition described in section 8401(30)(B) shall, if appropriate written application is submitted within one year after the date of separation, be offered a position [in the competitive service, within the Department of Defense, for which the individual is qualified, and the rate of basic pay for which is not less than the rate last received for technician service before separation] not later than 6 months after the date of the application.

5 U.S.C. § 3329 (1992).[1] Each of the five plaintiffs eventually was offered and received a competitive service appointment, but only after six months had passed in each case.[2] In addition, Plaintiff Fangerow was appointed to a position that had a basic rate of pay lower than that assigned to the last technician position that he had held.[3] In their amended complaint, the plaintiffs request the court to order the Secretary of Defense ("Secretary") to revise the effective date of their appointments and to change Fangerow's appointment retroactively to a position for which the basic rate of pay is no less than the rate he last received for his service as a technician. Plaintiffs do not waive their rights to entitlements that are consequences of the equitable relief they seek.

## II. STANDARDS OF REVIEW

### A. Dismissal/Judgment on the Pleadings

On a motion to dismiss, the court must take the allegations in the plaintiffs' pleading as true and must construe them in a light most favorable to the plaintiffs. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). Dismissal is appropriate only when it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

The standard of review for motions for judgment on the pleadings is "virtually identical" to the standard of review for motions to dismiss. *United Parcel Service v. Int'l Brotherhood of Teamsters,* 859 F.Supp. 590, 592 n. 1 & 593 (D.D.C.1994).

### B. Summary Judgment

A motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of

1. Section 3329 was amended in 1996 by, inter alia, replacing the requirement for the actual offer of a position with a requirement for "placement consideration in a position." This amendment does not apply to plaintiffs' claims, however, because it does not include a clear statement of congressional intent to eliminate any substantive rights that arose under the original law. See *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The parties agree that the pre-amendment version of the statute is the applicable authority.

2. Kramer, Jones, Findlay, Fangerow and Ainslie applied on Jan. 20, 1994, Feb. 8, 1994, Sept. 19, 1994, Nov. 4, 1993, and Dec. 14, 1994 respectively. The Department of Defense made the requisite offers to Kramer, Jones and Findley on Jan. 15, 1997, to Fangerow on Sept. 29, 1995, and to Ainslie in November 1995. Kramer, Jones, and Findlay commenced work on March 3, 1997, Fangerow commenced work on Dec. 18, 1995, and Ainslie commenced work on Jan. 8, 1996.

3. Fangerow received a pay adjustment equal to the difference between his pay rate as a technician and his new pay rate, *see* Compl. ¶ 22, 24, but seeks the equitable relief of retroactive appointment to a higher-paying position. Fangerow has since retired from the federal civil service, effective June 27, 1997.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322 n. 3, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. Implied Right of Action

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court reviewed the doctrine of implied rights of action and announced the following four-part analysis:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose especial benefit the statute was enacted"—that is, does the statute create a federal right in favor of the

plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. 2080 (citations omitted). Subsequently, in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court commented on the *Cort* analysis:

> It is true that in *Cort v. Ash,* the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose—are ones traditionally relied upon in determining legislative intent.

*Id.* at 575–76, 99 S.Ct. 2479 (citation omitted). In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 23–24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Court cited *Touche Ross* with approval and added: "The dispositive question remains whether Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end." Thus, the Court has continued to find all four *Cort* factors relevant, but has shifted the emphasis among these factors to focus on legislative intent.[4] *But see*

---

4. The case cited by the Secretary, *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), for the proposition, made for the first time in his reply brief, that "[a] right of action against the United

States cannot be implied but must be unequivocally expressed," is not to the contrary. Regarding actions against the United States, *Sherwood* states only the well-known principle that "[t]he United States, as sovereign, is im-

*Thompson v. Thompson,* 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring) (arguing that the Court "effectively overruled" the *Cort* analysis in *Touche Ross* and *Transamerica* ).

The statute in question, 5 U.S.C. § 3329, was originally enacted by § 544 of the National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484, 106 Stat. 2315, 2415 (1992). The accompanying House committee report shows that the Act's provisions for involuntarily separated civilian employees were enacted out of the concern that the Department of Defense had failed to manage reductions in operating budgets so as to "achieve the desired level of force reductions, minimize involuntary separations and maintain balance in the remaining work force." H.R.Rep. No. 102–527, at 270 (1992). The committee contrasted the management of the drawdown of military and civilian employees:

> The General Accounting Office has reported to the committee that for military personnel, the department strives to achieve and maintain a degree of balance between its accessions and losses in order to shape its military forces in terms of rank, years of service, and specialties .... The management of civilian personnel, however, is more decentralized than uniformed military personnel, and civilian personnel levels are driven more by operating budgets at the activity level. As a result of these factors, it is more difficult to obtain a full perspective on civilian personnel than on military personnel issues at the DOD and service headquarters levels.

Finding that "abuses" resulting from the "decentralized" management of civilian personnel were "widespread," *id.* at 267, the House committee directed the Secretary of Defense to "develop a plan for reducing the work force":

The plan should include DOD efforts to take a more aggressive [sic] approach toward *lessening the impact of reductions* by:

> (1) Providing for early retirement.
> (2) Encouraging other federal agencies to employ displaced DOD workers.
> (3) Improving existing mechanisms for priority placement, relocation assistance, counseling, testing, training referral, job bank information, and placement assistance.
> (4) Improving procedures for providing advance warning on planned reductions-in-force.

*Id.* at 270 (emphasis added).

This legislative history, read in its full context, demonstrates that the class for whose especial benefit the statute was enacted was the group of civilian personnel who were to absorb the "impact" of the force reductions. The concern underlying the House committee's directive to the Secretary was for the employees facing separation, as indicated by its further directions to ensure the provision of early retirement, alternative employment, and various other forms of career assistance.

Moreover, the committee, in sharply criticizing the Department's "decentralized" approach to downsizing and in addressing its directive to the Secretary, made clear that Congress had found that the Department could not be relied upon to ensure the provision of adequate placement assistance to affected civilian personnel. Two of the underlying purposes of the legislative scheme, then, were to "improv[e] existing mechanisms" for providing such assistance and to hold the Secretary more directly accountable for all aspects of the reduction management program. The statute itself set forth specific, well-defined standards for the provision of timely placement assistance to involuntarily separated

---

mune from suit save as it consents to be sued." *Id.* at 586, 61 S.Ct. 767. In its April 7, 1997 memorandum order, this court ruled

that sovereign immunity has been waived with respect to the equitable claims at issue here. Mem. Order at 3–4.

military reserve technicians and directed that the Secretary "ensure" that those standards were met.

■ The Secretary's interpretation of § 3329 is inconsistent with Congress's purposes. Under the Secretary's reading, involuntarily separated military reserve technicians must await an offer of employment from the Department, "albeit later than the statute provided," or in the alternative, go to court to "compel the agency to take the action withheld," such action to be effective only as of the date when the technicians may prevail. Def.'s Reply Br. at 7–8. Neither of these options holds the Secretary accountable in any way for "tak[ing] such steps as may be necessary to ensure" the timely provision of placement assistance to involuntarily separated military reserve technicians.

Because the plaintiffs are among the class for whose especial benefit § 3329 was enacted and a private remedy is necessary to further both the intent of Congress and the underlying purposes of the National Defense Authorization Act, the court concludes that § 3329 provides the plaintiffs with an implied right of action for an untimely offer of employment.

## B. Statutory Time Limitations

■ The Secretary cites *United States v. James Daniel Good Real Property*, 510 U.S. 43, 63–64, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), *Gottlieb v. Pena*, 41 F.3d 730 (D.C.Cir.1994), and *Friends of Crystal River v. U.S. E.P.A.*, 35 F.3d 1073, 1080 (6th Cir.1994) to support the broad proposition that "if Congress fails to specify a consequence for failure to comply with a time period in a statute, the specified time period is discretionary and not mandatory." Those cases do exemplify the longstanding principle that " 'many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them ... do not limit their power or render its exercise in disregard of the requisitions ineffectual.' " *Good*, 510 U.S. at 63, 114 S.Ct. 492 (quoting *French v.*

*Edwards*, 80 U.S. (13 Wall.) 506, 511, 20 L.Ed. 702 (1872)); *see also Brock v. Pierce County*, 476 U.S. 253, 260, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) ("When ... there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act."). In each case, however, the court found that strict adherence to the statutory time limitation would have had the effect of negating the benefits conferred and/or the authority granted by the statute. None of the cited cases, therefore, supports a reading of statutory time limitations so permissive as to negate the legislative intent of the statute.

For example, in *Good*, the Supreme Court considered whether a court must dismiss a forfeiture action that the government filed within the statute of limitations, but without complying with certain other statutory timing directives. 510 U.S. at 62–63, 114 S.Ct. 492. The Court noted its earlier holdings that "the federal courts could not release a person pending trial solely because the hearing had not been held 'immediately,' " and that failure to begin an investigation within a statutory time limit did not "divest[ ] the Secretary of authority to investigate a claim." *Id.* at 63–64, 114 S.Ct. 492 (citing *United States v. Montalvo–Murillo*, 495 U.S. 711, 716–717, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990); *Brock*, 476 U.S. at 259–262, 106 S.Ct. 1834 (1986)). Noting that "[i]t would make little sense to interpret directives designed to ensure the expeditious collection of revenues in a way that renders the Government unable, in certain circumstances, to obtain its revenues at all," the Court concluded that the Ninth Circuit erred in dismissing the forfeiture action for failure to comply with the statutory timing provisions. 510 U.S. at 64, 114 S.Ct. 492. *See also Gottlieb*, 41 F.3d at 735 (noting that "stripping the Secretary of authority to act after ten months could deny relief to deserving applicants"); *Friends*, 35 F.3d at 1080 (noting that

"courts are not to assume that an agency has lost jurisdiction merely because it has not acted within a statutorily specified time limit").

In contrast, plaintiff's requested relief would neither cause the Department to "lose its power to act" nor subvert the legislative intent of the statute. To the contrary, the Department in making late offers has already exercised (and arguably exceeded) its power to act under § 3329 with respect to the plaintiffs. *See Friends,* 35 F.3d at 1080 (noting that agencies "have 'no power to act . . . unless and until Congress confers power upon [them].'") (quoting *Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 374, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)). Moreover, the requested relief would have the effect of conferring upon the plaintiffs the full benefits of the timely offers intended by Congress. Accordingly, the court finds that the cases cited by the Secretary do not preclude the requested relief.

## C. Availability of Equitable Relief

■■■ The court has broad power to order appropriate equitable relief. "[I]f a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 69, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In the case of an implied right of action, appropriate relief is to be determined "by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The court finds that the requested remedy would best effectuate the policy of § 3329.[5]

■■ This court's jurisdiction to grant relief is based on § 702 of the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"), which waives sovereign immunity in regard to actions "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." It is not necessary that the suit be brought under the APA for the § 702 waiver to apply. *Swan v. Clinton,* 100 F.3d 973, 981 n. 4 (D.C.Cir.1996).

■■ An action may be found to be seeking relief other than money damages even if "success on the merits may obligate the United States to pay the complainant." *Kidwell v. Department of the Army,* 56 F.3d 279, 284 (D.C.Cir.1995).[6] "As long as the sole remedy requested is declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary recovery," the requested relief is to be considered nonmonetary within the meaning of the APA. *Id.* (quoting *Hahn v. United States,* 757 F.2d 581, 589 (3d Cir.1985)).

■■■ As with all tenured public employment, a nonprobationary appointment in the competitive service is a constitutionally protected property interest. *See Stephen v. Air Force,* 47 M.S.P.R. 672, 681 (M.S.P.B.1991) (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). The character of this interest cannot be precisely described, but certainly includes a significant measure of personal status, efficacy, self-worth, honor and duty in addition to financial security and other monetary compensation. *See, e.g., Hotel Syracuse v. Young,* 805 F.Supp. 1073, 1084–85 (N.D.N.Y.1992) (noting that "the impor-

---

5. The appointment dates requested by plaintiffs have been calculated under the reasonable assumption that they would have taken the same time to accept a timely offer as they did to accept the late offers. *See* Pl.'s Mot. J. Pleadings at 9 n.5.

6. Because this suit has not been brought in the Court of Claims, the Supreme Court's holding that a "pay-mandating" statute is necessary for that court to have jurisdiction to award money damages under the Tucker Act, 28 U.S.C. § 1491, see *United States v. Testan,* 424 U.S. 392, 403, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), is not applicable here.

tance to an individual of retaining his/her tenured employment can be much more substantial than [purely financial interests].""). ·Accordingly, the court finds that the plaintiffs' requested relief is not "negligible in comparison" with any future monetary recovery, and that it is within the court's jurisdiction to grant such relief.

## D. Defendant's Other Arguments

The Secretary raises numerous arguments for the first time in his reply brief. First, he states that plaintiffs have "failed to identify any injuries they sustained," but his contention that there is no injury pertaining to retirement eligibility at most reaches only Fangarow and has been addressed in Section III.C of this memorandum. *Compare* Def.'s Reply Br. at 2 with *id.* at 2 n. 2. Second, he alleges, without further explanation, that reading an implied right of action into § 3329 would somehow "contravene the provisions of other statutes affecting federal employment such as 5 U.S.C. § 2105(a) and Back Pay Act." *Id.* at 3. Third, he cites definitional statutes pertaining to "employee" and "back pay due to unjustified personnel action," 5 U.S.C. §§ 2105(a) & 5596, for the general proposition that no employment-related remedies may be provided without "the appointment of the individual to a position by an authorized federal employee or authorized federal employee or officer, the performance of federal function, and the supervision by a federal employee or officer." *Id.* The plaintiffs are not seeking back pay in this action. Finally, he suggests that the finding of an implied right of action in this court "would promote forum shopping," *id.*, without explaining what role this allegation should play in the court's analysis. In addition to being pleaded too late for favorable consideration, *see, e.g., In re Sealed Case,* 162 F.3d 670, 675 n. 5 (D.C.Cir.1998), these arguments are patently meritless.

## IV. CONCLUSION

The undisputed facts in this case are sufficient ·for the court to find that the plaintiffs are entitled to equitable relief under 5 U.S.C. § 3329. Therefore, the plaintiffs' motion for judgment on the pleadings will be granted, and the Secretary's motion to dismiss or for summary judgment will be denied. An appropriate order accompanies this memorandum.