468 S.E.2d 733

**WEST VIRGINIA HUMAN RIGHTS COMMISSION, on its Own Behalf and on Behalf of J.R. Mitchell, Plaintiff Below, Appellant,**

v.

**John GARRETSON, Defendant Below, Appellee.**

**No. 23078.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 1996.

Decided Feb. 15, 1996.

Paul R. Sheridan, Senior Assistant Attorney General, Charleston, for Appellant.

Johnnie E. Brown, Marianna Bush McHugh, McQueen & Brown, Charleston, for Appellee.

CLECKLEY, Justice:

The appellant and plaintiff below, the West Virginia Human Rights Commission (Commission), on its own behalf and on behalf of J.R. Mitchell, appeals from an order by the Circuit Court of Raleigh County dismissing a housing discrimination suit because of the Commission's failure to file suit in the Circuit Court of Raleigh County within thirty days pursuant to W.Va.Code, 5–11A–13(*o*)(1) (1992).[1] We reverse the circuit court's dismissal and remand with instructions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On July 27, 1993, J.R. Mitchell filed a complaint with the Human Rights Commission alleging that the appellee and defendant below, John Garretson, discriminated against him by refusing to rent a dwelling to him because he was African American. Mr. Mitchell claimed that on May 11, 1993, he contacted the defendant by phone regarding a house owned by the defendant. The day before Mr. Mitchell called the defendant, a "FOR RENT" sign was displayed in the window of the house in question. According to the Commission, the defendant knew that Mr. Mitchell was African American and told Mr. Mitchell that the rental unit had already been rented. Immediately after Mr. Mitch-

---

1. *See infra* for text of W.Va.Code, 5–11A–13(*o*)(1).

ell's call, white individuals called the defendant and inquired about the housing unit. The defendant allegedly informed the subsequent callers that the rental unit was available and that he preferred to rent to white tenants.

The Commission investigated the allegations and found reasonable cause to believe that there had been a violation of the Fair Housing Act. On April 27, 1994, the Commission issued a Notice of Charge. Pursuant to the Fair Housing Act of 1992, once the Commission has found reasonable cause the matter is to proceed to an administrative hearing unless one of the parties involved elects to have the charge litigated in the circuit court.[2] By notice dated May 17, 1994, the defendant exercised his right to have the claim adjudicated in circuit court.

Pursuant to W.Va.Code, 5–11A–13(o)(1):

"If an election is made under subsection (a) of this section, the commission shall authorize, and not later than thirty days after the election is made the attorney general shall commence and maintain, a civil action on behalf of the aggrieved person in the appropriate circuit court seeking relief under this subsection."

On July 22, 1994, Senior Assistant Attorney General Paul R. Sheridan filed a complaint in the Raleigh County Circuit Court asserting Mr. Mitchell's charges. The complaint was filed approximately two months after the defendant's election.

The defendant filed a motion to dismiss the action asserting that because the Commission failed to file in circuit court within thirty days of his election, the complaint should be dismissed. The Commission contested the motion to dismiss asserting that the thirty day requirement "was designed to promote prompt transfer of claims where a circuit

2. West Virginia Code, 5–11A–13(a) provides:

"When a charge is filed under section eleven [§ 5–11A–11] of this article, a complainant, a respondent or an aggrieved person on whose behalf the complaint was filed, may elect to have claims asserted in that charge decided in a civil action under subsection (o) of this section in lieu of a hearing under subsection (b) of this section. The election must be made not later than twenty days after the receipt by the electing person of service under section eleven

court trial had been elected, but that a failure to file within thirty days did not bar the claim."

On April 24, 1995, the circuit court issued a Memorandum Order concluding the action was time barred. The court issued an order on April 25, 1995, granting the defendant's motion to dismiss finding that W.Va.Code, 5–11A–13(o)(1) "is a statute of limitations," and the "failure to comply with a statute of limitations is fatal to the action." The circuit court also concluded that the case "affects the interests of only the aggrieved party and it has no impact on the rights of [the] general public." The Commission now appeals from the circuit court's order.

## II.

## DISCUSSION

The Commission asserts that the circuit court erred by dismissing its suit for failure to file the underlying housing discrimination suit in the circuit court within the thirty day time limit imposed by W.Va.Code, 5–11A–13(o)(1). Under the Commission's theory W.Va.Code, 5–11A–13(o)(1) is not a statute of limitations, but merely a provision emphasizing the Legislature's desire that housing discrimination claims should be handled in a timely fashion. In support of its argument that W.Va.Code, 5–11A–13(o)(1) is nonjurisdictional in nature, the Commission points to the fact that this Code section does not list consequences for the failure to comply with the time limit. After examining the aforementioned statute, we find that W.Va. Code, 5–11A–13(o)(1) is not a statute of limitations and the Commission is entitled to continue its suit in the circuit court as long as its delay is not prejudicial to the rights of a party.[3]

of this article or, in the case of the commission, not later than twenty days after such service. The person making such election shall give notice of doing so to the commission and to all other complainants and respondents to whom the charge relates."

3. The purpose of the time limit is to allow the parties an opportunity to gather evidence while facts are still fresh and to motivate parties to diligently pursue their claims. The time deadline here really is not the typical filing deadline for

## A.

### STANDARD OF REVIEW

 The disposition of this case arose as a result of a motion to dismiss. In ruling on the motion to dismiss, the circuit court construed the thirty day limitations in W.Va. Code, 5–11A–13(o)(1) as a jurisdictional prerequisite. We review dismissals under Rule 12 of the West Virginia Rules of Civil Procedure *de novo*. *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Also, "[i]nterpreting a statute ... presents a purely legal question subject to our *de novo* review" on which neither party bears the burden of proof. Syl. pt. 1, *Appalachian Power Co. v. State Tax Dept. of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995); *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 350, 452 S.E.2d 436, 441 (1994). In addition, because only well pleaded facts are taken as true on a motion to dismiss, we will not accept a party's unsupported conclusions or interpretations of law. Nevertheless, we may affirm a circuit court's dismissal order under any independently sufficient grounds.

## B.

### ANALYSIS

 The circuit court dismissed the underlying housing discrimination law suit on the grounds that the suit was timed barred because the statutory thirty-day time period for filing is jurisdictional.[4] As an appellate court we are required, on a matter of law

committed to our plenary review, to interpret the statute as we read it, consistent with our exposition of discerned legislative intent and without paying special deference to the court below. Fulfilling our proper function here, we reach a result contrary to the circuit court. Consequently, we hold that W.Va. Code, 5–11A–13(o)(1), is a directory statute and is not a mandatory bar to an underlying housing discrimination action. We now proceed to present an analysis of the bases of our decision, explicating our reasoning in suitable detail.

 Our starting point, of course, is the language of the statute. *See Bullman v. D & R Lumber Co.*, 195 W.Va. 129, 135 n. 9, 464 S.E.2d 771, 777 n. 9 (1995). A statute is interpreted on the plain meaning of its provision in the statutory context, informed when necessary by the policy that the statute was designed to serve.[5] *See State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, *supra* (the court should look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy). A statute must be construed to give effect to all of its provisions, and not to diminish any of them. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1019, 117 L.Ed.2d 181, 189 (1992), *superseded by statute as stated in Matter of Merchants Grain, Inc.*, 59 F.3d 630 (7th Cir.1995); Syl. pt. 2, *Mills v. Van Kirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994); Syl. pts. 2 & 3, *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990).

---

the plaintiff; it is a deadline for *removal* which can be initiated by either party.

4. The bar to a claim raised by the statute of limitations is an affirmative defense to the cause. *See, e.g.*, W.Va.R.Civ.P. 8(c). When properly raised, and if found to apply, the running of the statutory period means that the plaintiff is not entitled to a judicial remedy for the alleged wrong. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* Civil 2d § 1270 and n. 29 at 425 (1990). The raising of the statutory bar to a remedy does not, as such, deprive the court of jurisdiction to hear the cause in the first instance. Indeed, the court could not adjudicate the question of the proper application of the statute if it did not have subject matter jurisdiction.

5. It is well-established that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39, 50 (1987), *superseded by statute as stated in Hunter v. Ameritech*, 779 F.Supp. 419 (N.D.Ill.1991). (Citations and internal quotations omitted). In addition, the plain meaning of a statute is normally controlling, except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. *See* Norman J. Singer, 2A *Sutherland Statutory Construction* § 46.07 at 126–27 (5th ed. 1992). In such case, it is the intentions of the legislators, rather than the strict language, that control.

The West Virginia Fair Housing Act is worded as a broad legislative mandate to eliminate discrimination against, and equalize housing opportunities for, all races. The Act is a clear pronouncement of our State's commitment to end the exclusion of African-Americans from the American mainstream. Thus, the right to be free from housing discrimination is essential to the goal of an harmonious and unbiased society.

As in any case of statutory construction, we must interpret the law to avoid constitutional conflicts, if the language of the law will reasonably permit such an avoidance. To adopt the reading of 5–11A–13(o)(1) urged upon us by the appellee, and accepted by the circuit court, would require us to conclude that the operation of the thirty day filing period as a time bar has deprived Mr. Mitchell of his rights to due process and equal protection of the law. As recognized by the United States Supreme Court in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982),[6] a case that is directly on point, the claimant Mitchell had a property interest in his housing discrimination claim. *See also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Jones v. Glenville State College*, 189 W.Va. 546, 433 S.E.2d 49 (1993). As *Logan* held, to dismiss that claim because of an agency failure to meet a time deadline is equivalent to extinguishing Mr. Mitchell's property interest without a hearing. As *Logan* recognized, Mr. Mitchell is entitled to have his claim addressed on the merits; and by virtue of the Commission's finding of reasonable cause, he is entitled to a hearing before those merits can be dismissed. Although failure by Mr. Mitchell, the claimant, to take some action in a timely fashion could warrant a dismissal prior to a hearing, due process of law will not allow a state agency's failure to meet a deadline to deny Mr. Mitchell his day in court.

The *Logan* Court also concluded that dismissing a claim because the state's Fair Employment Practices Commission had failed to meet a statutorily mandated deadline effectively created two classes of claimants: (1) those whose claims were timely processed by the Commission and thus received full consideration on the merits, and (2) those whose claims were not timely addressed by the Commission and thus received no consideration on the merits. Such a distinction, the Court concluded, failed to meet even minimal standards of rationality and therefore violated the Equal Protection Clause. *See Logan*, 455 U.S. at 438, 102 S.Ct. at 1159, 71 L.Ed.2d at 279 (opinion of Blackmun, J., joined by Brennan, Marshall, and O'Connor, JJ.), and 455 U.S. at 422, 102 S.Ct. at 1161, 71 L.Ed.2d at 282 (concurring opinion of Powell, J., joined by Rehnquist, J.). *See also O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977) (requiring victims of city's negligence to file notice of claims within thirty days of the tort arbitrarily distinguished between classes of tort victims). Similarly, affirming the circuit court here would cause W.Va.Code, 5–11A–13(o)(1) to create two classes of claimants: (1) those whose cases the Commission files within thirty days and who can receive a trial and decision on the merits, and (2) those whose cases the Commission files after the thirty-day time period and are summarily dismissed. Like the Supreme Court, we fail to see any rational basis for sustaining such a distinction.

In light of these serious constitutional difficulties presented by the circuit court's reading of the Act, we must reach a different conclusion, if such would be reasonable. For the reasons explained below, we conclude that not only is a different interpretation plausible but also that it follows naturally

---

6. In *Logan*, the appellant filed a timely charge of unlawful conduct with the Illinois Fair Employment Practices Commission (Commission) pursuant to the Illinois Fair Employment Practices Act. By statute, the Commission was required to convene a factfinding conference within 120 days of the filing of the charge to investigate the parties' position, gather evidence, and explore the possibility of a settlement. The Commission convened the factfinding conference five days after the expiration of the 120–day statutory period. Reversing the Illinois Supreme Court, the United States Supreme Court found that the Commission was not divested of jurisdiction for failure to file in a timely fashion. Moreover, the Supreme Court held that the appellant had a protected property interest which he may not be deprived of without due process of law and that a remedy such as a post-termination tort action did not provide due process.

from a fair reading of the statute, from the decisions of other courts that have confronted similar interpretive issues, and from the broad social policies that prompted the Legislature to enact the Fair Housing Act.

We now turn to the question whether the limitation period contained in W.Va.Code, 5–11A–13(o)(1) is mandatory or directory. In examining the language of the statute, we believe it is not insignificant that the section is not in any way the typical limitation imposed on plaintiffs to ensure that they expeditiously pursue their claims and to protect defendants against stale claims. Rather W.Va.Code, 5–11A–13(o)(1) is part of a removal statute that permits either party to remove an already expeditiously filed claim from the administrative process to circuit court. Indeed, in this case the Commission was acting as the defendant's agent in filing the removal. It would be an extremely weird (not to mention grossly unfair) interpretation of the statute that would require dismissal of a plaintiff's claim because a state agency failed to timely carry out the defendant's request that the claim be filed. We cannot believe the Legislature intend such a bizarre and absurd result.[7]

▆▆▆▆ We do not question the Legislature's exclusive authority to establish time limits for the filing of lawsuits and the consequences that flow if the limits are not followed, including dismissal.[8] While it is the function of the Legislature to make the laws, it is the function of the courts finally and authoritatively to interpret what the law says. Accordingly, before this Court will hold that the Legislature has provided for the dismissal of a lawsuit with prejudice under the circumstances of this case, the intention to do so must be clearly stated. We believe the provision before us fails to show a clear intent that a lawsuit should be dismissed with prejudice, especially where the noncompliance is not caused by the alleged victim of racial discrimination. As we discuss below, absent more explicit language or conduct evidencing bad faith, "stonewalling" or unreasonable and flagrant delay,[9] we are unwilling to interpret this provision as a prerequisite mandating dismissal. The practical implications of a contrary construction of this statute would create potential inequities that the West Virginia Legislature could not have intended when it enacted this social legislation. If we followed the ruling of the court below, this case would present the paradigm example in which an innocent victim would be forced to suffer the dismissal of his lawsuit because the Commission failed to act properly. It is doubtful that such an anomalous result was contemplated by the Legislature that placed the fate of a victim of racial discrimination in the hands of the Commission.

Many jurisdictions have considered the issue of whether a statute listing a time limit without specifying consequences should oper-

---

7. Moreover, in light of this plain meaning interpretation of W.Va.Code, 5–11A–13(o)(1) as imposing a deadline for removal, rather than a statute of limitation, if we were to accept the argument that the provision was mandatory rather than directive, the remedy for the Commission's untimely filing would not be to dismiss Mr. Mitchell's claim entirely. Instead, the appropriate remedy would be to remand the case to the Commission for further proceedings. *See United States v. Rice,* 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946); *McGowan v. Williams,* 623 F.2d 1239 (7th Cir.1980); *State of Ohio ex rel. Ney v. PJC, Inc.,* 592 F.Supp. 28 (S.D.Ohio W.D. 1984); *Kaib v. Pennzoil Co.,* 545 F.Supp. 1267 (W.D.Penn.1982); *In re Bear River Drainage Dist.,* 267 F.2d 849 (10th Cir.1959). Obviously, appellee has not sought such a remedy here because it was he who requested removal.

8. The United States Supreme Court stated this axiom in *Holmberg v. Armbrecht,* 327 U.S. 392,

395, 66 S.Ct. 582, 584, 90 L.Ed. 743, 746 (1946): "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." Therefore, when the West Virginia Legislature provides specific remedial time limits into the Fair Housing Act, we must respect the remedial compromise embodied in these statutes. To give the statutes proper effect, we conclude that only "statutes of limitations" are relevant in determining whether a claim is time-barred. Other time restraints may be relevant in determining the extent to which a claimant is entitled to equitable remedies.

9. We agree with the United States Supreme Court's caveat in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280, 300 (1975): "But a party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party."

ate to actually divest a court of jurisdiction to hear a case for an agency's failure to abide by the time limit. Frequently, these jurisdictions have held that the absence of a section providing for consequences for inaction or late action creates a presumption that these statutes merely fill a directory function and no consequences befall the negligent agency's failure to comply.[10] We have been presented with no persuasive basis in law or reason for departing from this solid line of authority.

Even the United States Supreme Court has recognized that an agency's failure to comply with filing time limits is not necessarily fatal to the agency's claim. In *Brock v. Pierce County*, 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248, 255–56 (1986), the Supreme Court noted:

"We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, . . . courts should not assume that . . . [the Legislature] intended the agency to lose its power to act." (Footnote omitted).

We find the *Brock* analysis especially compelling considering the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *United States v. Nashville, C. & St. L.R. Co.*, 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81, 83 (1886).

There is no authoritative checklist that can be consulted to determine conclusively if a statute is mandatory or directory. While a wide array of factors may be suggestive, typically no single word in itself necessarily provides the answer. Yet, some facts may be more indicative of whether the legislature intended for a statute to be mandatory. One very important consideration is whether W.Va.Code, 5–11A–13(*o*)(1) mentions any consequences for the Commission's failure to remove the case timely. But even here, we will not take a mechanistic approach and simply declare that any statute that fails to mention the consequences of failure to follow a procedural provision is automatically deemed directory. While the absence of consequences creates a presumption that the statute is merely directory, this presumption is not conclusive. *See Syquia v. Board of Education of Harpursville Central School District*, 80 N.Y.2d 531, 591 N.Y.S.2d 996, 606 N.E.2d 1387 (1992).[11]

---

**10.** In *Fort Worth National Corp. v. Federal Savings and Loan Insurance Corp.*, 469 F.2d 47, 57 (5th Cir.1972), *overruling recognized by Sierra Pacific Indus. v. Block*, 643 F.Supp. 1256 (1980), *affirmed, in part, and rev'd, in part sub nom.*, 866 F.2d 1099 (9th Cir.1989), the Fifth Circuit interpreted a statute requiring the Federal Savings and Loan Corporation to "render its decision 'within ninety days after submission . . . of the complete record on the application'" was nonjurisdictional and could not be used to void the Corporation's right to file beyond the ninety-day period. (Citation omitted). The court found that "[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *Fort Worth National Corp.*, 469 F.2d at 58.

Similarly, the Sixth Circuit also found that it was only harmless error when an agency fails to follow a procedural rule if there is no significant injury to a party, "especially when the agency is not itself adjudicating but is conducting preadjudication activities." *Equal Employment Opportunity Commission v. Kimberly–Clark Corporation*, 511 F.2d 1352, 1361 (6th Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975). *See also United States v. Boccanfuso*, 882 F.2d 666, 671 (1989) (finding "[f]ederal agencies do not lose jurisdiction by their failure to comply with statutory time limits unless the statute demonstrates congressional intent that this result occur"); *St. Regis Mohawk Tribe, New York v. Brock*, 769 F.2d 37, 41 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986) (listing citations and stating the general principle that "'[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision'"). (Emphasis in original; citation omitted).

**11.** *Sutherland Statutory Construction* provides a good discussion of the proper way of distinguishing between mandatory and directory statutes:

"There is an important distinction between directory and mandatory statutes. The violation of a directory statute is attended with no consequences, since there is a permissive element. The failure to comply with the requirements of a mandatory statute either invalidates

When a statute is silent on such an important factor, we look to the overarching design to glean the legislative intent for this statute. *See McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. at 772, 461 S.E.2d at 523 ("When a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction. Absent explicatory legislative history ..., this court is obligated to consider the overarching design of the statute."). The policy underlying the Human Rights act is embodied in W.Va. Code, 5–11–2 (1989). This provision states, in pertinent part:

"It is the public policy of the state of West Virginia to provide all of its citizens ... equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property.... Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, blindness, handicap, or familial status.

"The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, handicap, or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society."

The policy statement for the West Virginia Fair Housing Act reiterates the above premise by stating that "[i]t is the policy of the State of West Virginia to provide, within constitutional limitations, for fair housing throughout the state." W.Va.Code, 5–11A–2 (1992). The legislative rules for the processing of complaints under the Fair Housing act mandate that "[t]hese regulations shall be liberally construed to permit the commission to discharge its statutory functions and to

secure just and expeditious determinations of all matters before the West Virginia Human Rights Commission." 77 W.Va.C.S.R. 1.5 (1992).

We cannot be unmindful of the policy consideration implicated here that the Legislature intended to eliminate racial discrimination in housing. The Legislature necessarily determined that liberally construing the regulations and the statutes concerning fair housing was necessary to accomplish the greater good. Construing W.Va.Code, 5–11A–13(*o*)(1) as a mandatory and jurisdictional requirement, as the circuit court did, is inconsistent with the spirit of the statute. We find that if the Legislature intended W.Va.Code, 5–11A–13(*o*)(1) to be mandatory and thus jurisdictional it would have expressed specific intent by providing for consequences for a breach of this statute.

The defendant argues that the time limit embodied in W.Va.Code, 5–11A–13(*o*)(1) should be considered jurisdictional because the filing of a complaint is a simple task. This argument also is wide of the mark. It is not the simplicity of the procedure that dictates the nature of a statute but rather the legislature's intent. Adopting "[a] rule that rendered every administrative decision void unless it was determined in strict literal compliance with statutory procedure would not only be impractical but would also fail to recognize the degree to which broader public concerns, not merely the interests of the parties, are affected by administrative proceedings[.]" *Syquia v. Board of Educ. of Harpursville Central School Dist.,* 80 N.Y.2d at 536, 591 N.Y.S.2d at 998, 606 N.E.2d at 1389.

The defendant places substantial reliance on the United States Supreme Court's holding in *Mohasco Corporation v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532

---

the transaction or subjects the noncomplier to the consequences stated in the statute.

"This distinction grows out of the fundamental difference in the intention of the legislature in enacting the two statutes. Although directory provisions are not intended by the legislature to be disregarded, the seriousness of non-compliance is not considered so great that liability automatically attaches for failure to comply. The question of compliance remains

for judicial determination. If the legislature considers the provisions sufficiently important that exact compliance is required then the provision is mandatory. If the statute is merely a guide for the conduct of business and for orderly procedure rather than a limitation of power, it will be construed as directory." (Footnotes omitted). 1A Norman J. Singer, *Sutherland Statutory Construction,* § 25.03 at 449 (5th Ed.1991).

(1980), to suggest that such time limits must be processed promptly. While it is true that the *Mohasco* court upheld a summary judgment against a respondent for failure to file on time, *Mohasco* is clearly distinguishable from the instant case. *Mohasco* dealt with a private cause of action in which a dismissal for untimely filing prejudiced only the rights of one individual, and the affected individual was responsible for the tardiness.

The circuit court acknowledged that the holding of *Mohasco* covered individual complainants. However, the circuit court mistakenly found that "the present case is of the *Mohasco* category, and not the *Brock* category, because it affects the interest of only the aggrieved party and it has no impact on the rights of the general public." In the present case, it is undeniable that "public rights are at stake, and the ... [Commission's] delay, under the ... [defendant's] theory, would prejudice the rights of the ... [general] public." 476 U.S. at 261, 106 S.Ct. at 1840, 90 L.Ed.2d at 256. Failing to combat discrimination as a unified body erodes away the fundamental principles underlying an harmonious and unbiased society.

 As "creatures of statutory authority", agencies possess only the power to act given them by the Legislature. *Friends of Crystal River v. United States Environmental Protection Agency*, 35 F.3d 1073, 1080 (6th Cir.1994). We do not believe it appropriate to divest an agency of such power without contrary evidence of legislative intent. We refuse to "assume that an agency has lost jurisdiction merely because it has not acted within a statutorily specified time limit." *Friends of Crystal River*, 35 F.3d at 1079. *See also Teamsters Local Union 1714 v. Public Employee Relations Board*, 579

A.2d 706, 710 (D.C.App.1990). Moreover, "[a] statute ... should always be read in conjunction with its evident purposes. When we look behind the silent face of the statute, we find clear ... [legislative] intent not to restrict ... [an agency's] enforcement powers[.]" *Equal Employment Opportunity Commission v. Kimberly-Clark Corporation*, 511 F.2d at 1357.

Because we find no legislative intent supporting the proposition that W.Va.Code, 5–11A–13(*o*)(1) is mandatory in nature, and to avoid constitutional and logical inconsistencies, we find that W.Va.Code, 5–11A–13(*o*)(1) is directory and thus nonjurisdictional. As a result, the circuit court must permit the Commission to continue with this action.

## III.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Circuit Court of Raleigh County and remand this case for proceedings consistent with this opinion.

Reversed and remanded with instructions.

McHUGH, C.J., deeming himself disqualified, did not participate in the consideration and decision of this matter.

MILLER, Retired Justice, sitting by temporary assignment.