STATE of Indiana, CIVIL RIGHTS COMMISSION, in its own right and on behalf of Joseph C. Belzer and Theresa Wright, Appellants–Plaintiffs,

v.

INDIANAPOLIS NEWSPAPERS, INC., Unknown Directors of Indianapolis Newspapers, Inc., Ahm Graves Company, Inc., Unknown Directors of Ahm Graves Company, Inc., Sherry Hoyt, Shirley Morphey and Jacqueline D. Baker, Appellees–Defendants.

No. 49A04–9703–CV–95.

Court of Appeals of Indiana.

Nov. 30, 1998.

---

Jacquelyn Thompson, Indiana Civil Rights Commission, Indianapolis, for Appellants–Plaintiffs.

Jan M. Carroll, Mark J. Dinsmore, Barnes & Thornburg, Indianapolis, for Appellees–Defendants.

## OPINION

BAILEY, Judge.

### Case Summary

Plaintiff–Appellant Indiana Civil Rights Commission, in its own right and on behalf of Joseph C. Belzer and Theresa Wright (collectively, "ICRC"), appeals the judgment of the trial court dismissing its complaint against

Indianapolis Newspapers, Inc. ("INI"), A.H.M. Graves, Inc., Sherry Hoyt, Shirley Morphey ("Graves"), and Jacqueline D. Baker ("Baker"). We affirm in part and reverse and remand in part.

### Issue

The sole issue raised on appeal is whether the trial court erred in dismissing the ICRC's complaint alleging discrimination under the Indiana Fair Housing Act.[1]

### Facts

The facts indicate that Baker was the owner of residential rental property located on the north side of Indianapolis. (R. 9). Baker contracted with Graves to advertise for and manage the rental of the property. (R. 10). In January 1994, Graves placed an advertisement for publication in *The Indianapolis Star* offering Baker's property for rent with the following stipulations: "[n]o pets, no smokers, no children." (R. 17). On January 31, 1994, Joseph C. Belzer ("Belzer") telephoned Graves to inquire about renting Baker's property and residing there with Theresa Wright ("Wright") and Wright's minor daughter. (R. 10, 11). A Graves representative informed Belzer that the property would not be rented to persons with children. (R. 11).

On February 7, 1994, Belzer filed an administrative complaint with the U.S. Department of Housing and Urban Development and the ICRC claiming that Graves had refused to rent and discriminated in rental occupancy, advertising, and broker's services on the basis of familial status. (R. 18). The complaint was later amended to add INI and Baker as respondents and Wright as a complainant. (R. 19, 20). On April 12, 1996, the ICRC issued a Notice of Finding concluding that the evidence supported the complainants' allegation of unlawful discrimination on the basis of familial status. (R. 201). Each

of the three respondents thereafter elected to have the merits of the complaint tried in a civil action rather than by an ICRC administrative law judge. (R. 77, 93, 214).[2]

On June 28, 1996, the ICRC filed a complaint in its own right and on behalf of Belzer and Wright, alleging that INI, Graves, and Baker had violated the Indiana Fair Housing Act. (R. 8). Thereafter, INI and Graves each filed Motions to Dismiss the complaint pursuant to Ind. Trial Rule 12(B).[3] (R. 79, 125). INI's Motion to Dismiss set forth four bases for dismissal as follows: 1) the complaint was not filed within the thirty-day time period set forth in IND.CODE § 22-9.5-6-13(a) and thus the complaint failed to state a claim on which relief could be granted; 2) the trial court lacked subject matter jurisdiction because Belzer was neither the child's father. nor guardian and therefore lacked standing; 3) the ICRC's summons to INI's "unknown directors" constituted insufficient process; and 4) INI was not served with a copy of the summons and complaint and thus service of process was insufficient.[4] Graves' Motion to Dismiss similarly alleged lack of subject matter jurisdiction and failure to state a claim. After a hearing, the trial court granted Graves' and INI's motions to dismiss with prejudice. (R. 220, 222, 224). This appeal ensued.

### Discussion and Decision

#### *Background*

■ The ICRC, as an administrative agency, possesses only those powers specifically granted to it by statute. *Indiana Civil Rights Comm'n v. Washburn Realtors, Inc.*, 610 N.E.2d 293, 297 (Ind.Ct.App.1993). In addition to its broad mandate to remedy discrimination based on race, religion, color, sex, disability, national origin, and ancestry, *see* IND.CODE § 22-9-1-2, the ICRC is also

---

1. IND.CODE §§ 22-9.5-1-1 to -11-3.

2. Once the ICRC has made a finding that reasonable cause exists to believe that a discriminatory housing practice has occurred, the matter proceeds to an administrative hearing unless one of the parties involved elects to have the charge litigated in a civil action. *See* IND.CODE §§ 22-9.5-6-12; 22-9.5-6-14.

3. Baker joined in both co-defendants' Motions to Dismiss (R. 154).

4. The Motion to Dismiss also asserted as a basis that certain amendments to the administrative complaint were void for lack of verification before a notary. However, INI has withdrawn this argument on appeal, conceding that no such verification is necessary. (Appellee INI's brief at 13 n. 8).

specifically charged with enforcing the Indiana Civil Rights Act, the Employment Discrimination Against Disabled Persons Act, and the Indiana Fair Housing Act. *See* IND.CODE §§ 22-9-1, 22-9-5, 22-9.5.[5] The purposes of the Indiana Fair Housing Act ("the Act") are as follows:

(1) To provide for fair housing practices in Indiana.

(2) To create a procedure for investigating and settling complaints of discriminatory housing practices.

(3) To provide rights and remedies substantially equivalent to those granted under federal law.

IND.CODE § 22-9.5-1-1; *see also* IND. ADMIN. CODE tit. 910, r. 2-1-1(a) ("[i]t is the policy of the ICRC to provide for fair housing throughout the state of Indiana."). Among other things, the Act prohibits discrimination based on familial status in connection with the sale or rental of dwellings. IND.CODE § 22-9.5-5-1. The Act further prohibits the making, printing, or publishing of any notice, statement, or advertisement concerning the sale or rental of a dwelling which indicates any preference, limitation, or discrimination based upon familial status. IND.CODE § 22-9.5-5-2. The Act requires the ICRC to receive, investigate, seek to conciliate, and act on complaints alleging unfair housing practices. *See* IND.CODE §§ 22-9.5-4-3; -6-1(a).[6]

Together with the ICRC's role in administratively enforcing the Act's provisions, the statute provides aggrieved parties with the companion right of private enforcement. Indiana Code section 22-9.5-7-1 provides in relevant part as follows:

(a) An aggrieved person may file a civil action in the circuit or superior court located in the county in which the alleged dis-

criminatory practice occurred not later than one (1) year after the occurrence of the termination of an alleged discriminatory housing practice or the breach of a conciliation agreement entered into under this article, whichever occurs last, to obtain appropriate relief with respect to the discriminatory housing practice or breach.

(b) The one (1) year period does not include any time during which an administrative hearing under this article is pending with respect to a complaint or finding of reasonable cause under this article based on the discriminatory housing practice.

An aggrieved person may file a private civil action whether or not an administrative complaint has been filed and without regard to the status of such a complaint. IND.CODE § 22-9.5-7-1(c). The only limitation on the foregoing right is that an aggrieved party may not file a private civil action based upon an alleged discriminatory housing practice that forms the basis of a finding of reasonable cause issued by the ICRC, if the ICRC has begun a hearing on the record with respect to the finding of reasonable cause. IND.CODE § 22-9.5-7-1(e). The prevailing party in a private civil action may obtain as relief actual and punitive damages, reasonable attorney's fees, court costs, and injunctive relief, including the ordering of appropriate affirmative action. IND.CODE § 22-9.5-7-2. Additionally, the ICRC may intervene in a private civil action if it determines that the case is of "general public importance," and may obtain similar relief otherwise available to the ICRC in a civil action. IND.CODE §§ 22-9.5-7-4; -8.1-2.[7]

Finally, the ICRC possesses the right to enforce the Act's provisions through the fil-

---

5. The legislative mandate also provides the ICRC with a broad range of powers and duties intended to aid in effectuating the purposes of the Civil Rights Act, including the following: formulating policies and making recommendations, creating advisory agencies and conciliation councils, furnishing technical assistance to further compliance with the Act, promoting the creation of local civil rights agencies, and requiring perpetrators to comply with a broad range of affirmative remedial actions. *See* IND.CODE § 22-9-1-6(d), (f), (k), (n), (o).

6. The Act may also be administered by a local agency in cases where, pursuant to IND CODE § 22-9-1-12.1(b), a local government enacts an ordinance establishing a human rights commission and charges the agency with administering the Act. *See* IND.CODE § 22-9.5-4-1(b).

7. This available relief includes the grant of permanent or temporary injunctions and restraining orders, the assessment of monetary damages, attorney's fees, and court costs, and the award of civil penalties to vindicate the public interest. IND.CODE § 22-9.5-8.1-2.

ing of an action in its own right. Pursuant to IND.CODE § 22–9.5–8.1–1, the ICRC may file a civil action for appropriate relief in a circuit or superior court if the ICRC has reasonable cause to believe that:

1) A person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article; or

2) A person has been denied any right granted by this article and that denial raises an issue of general public importance.

Indiana Code section 22–9.5–8.1–3 provides for intervention in the foregoing civil action by either an aggrieved party to the discriminatory housing practice, or by a party to a conciliation agreement concerning the discriminatory housing practice.

In this case, interpreting the relevant provisions of the Act requires the resolution of issues of first impression in this state. Thus, we look for guidance to applicable standards of review and principles of statutory construction, as well as to other jurisdictions which have interpreted substantially similar provisions.

### Motion to Dismiss

A motion to dismiss under T.R. 12(B)(6) tests the legal sufficiency of the claim, not the facts which support it. *Vakos v. Travelers Ins.*, 691 N.E.2d 499, 501 (Ind. Ct.App.1998), *trans. denied.* On review, we consider the pleadings in the light most favorable to the nonmoving party and we draw every reasonable inference in favor of that party. *Id.; Ratliff v. Cohn*, 693 N.E.2d 530, 534 (Ind.1998). A dismissal under T.R. 12(B)(6) is improper unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Thomson Consumer Elecs., Inc. v. Wabash Valley Refuse Removal, Inc.*, 682 N.E.2d 792, 793 (Ind.1997) (quoting *Obremski v. Henderson*, 497 N.E.2d 909, 910 (Ind.1986)). Further, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record. *Garage Doors of Indianapolis, Inc. v. Morton*, 682 N.E.2d 1296, 1301 (Ind.Ct.App.1997), *trans. denied.* However, dismissals under T.R. 12(B)(6) are rarely appropriate. *Ratliff*, 693

N.E.2d at 534 (quoting *Obremski,* 497 N.E.2d at 910).

### Statutory Construction

Within the framework of legislative construction, an appellate court attempts to ascertain and give effect to the legislative intent as expressed in the statute. *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs,* 693 N.E.2d 972, 974 (Ind.Ct.App. 1998). Where a statute has not previously been construed, the express language of the statute and the rules of statutory construction apply. *Id.* This court is required to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and difficulty and to prefer public convenience. *Id.; Auto–Owners Ins. Co. v. State,* 692 N.E.2d 935, 939 (Ind.Ct.App.1998). In so doing, we are required to keep in mind the objects and purposes of the statute as well as the effect and repercussions of such an interpretation. *Indiana State Teachers Ass'n,* 693 N.E.2d at 974. Further, we read an Act's sections as a whole and strive to give effect to all of the provisions, so that no part is held meaningless if it can be reconciled with the rest of the statute. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998). We presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

### Dismissal of Complaint

#### IND.CODE § 22–9.5–6–13

The ICRC contends that the trial court erred in dismissing its complaint against INI, Graves, and Baker. According to the ICRC, its failure to comply with the thirty-day time limit set forth in IND.CODE § 22–9.5–6–13 should not be construed as fatal to the housing discrimination complaint filed on behalf of Belzer and Wright.

Indiana Code section 22–9.5–6–12 provides that once the ICRC has made a finding that reasonable cause exists to believe that a discriminatory housing practice has occurred, "[a] complainant, a respondent, or an ag-

grieved person on whose behalf the complaint was filed may elect to have the claims asserted in a finding of reasonable cause decided in a civil action as provided by section 13 [IC 22–9.5–6–13] of this chapter." IND.CODE § 22–9.5–6–12(a). The statute further provides that such an election must be made not later than twenty days after receipt of service by the electing party. IND.CODE § 22–9.5–6–12(b). In this case, the ICRC issued its Notice of Finding on April 12, 1996. On April 19, 1996, Baker filed notice electing to have the claims against her adjudicated in a civil action. In like fashion, INI and Graves filed their Notices of Election on May 22, 1996.[8]

Indiana Code section 22–9.5–6–13(a) provides as follows:

> If a timely election is made under section [12] of this chapter, the commission *shall,* not later than thirty (30) days after the election is made, file a civil action on behalf of the aggrieved person seeking relief under this section in a circuit or superior court that is located in the county in which the alleged discriminatory housing practice occurred.

(emphasis added). In this case, the ICRC filed its complaint on June 28, 1996, seventy days after Baker's notice of election, and thirty-seven days after Graves and INI filed their notices of election. In moving to dismiss the complaint, all three defendants claimed the complaint failed to state a claim on which relief could be granted because the ICRC failed to timely file the action.

The ICRC concedes that it belatedly instituted the civil action against the three defendants and thus failed to comply with the thirty-day time limit set forth in IND.CODE § 22–9.5–6–13(a). However, according to the ICRC, the complaint is not subject to dismissal because the time limitation for filing is directory rather than mandatory, and because the ICRC substantially complied with the purpose of the statutory scheme.

The distinction between directory and mandatory provisions in a statute is that

violation of the former is not usually fatal to the procedure, while a departure from the latter is fatal to any proceeding to obtain the benefit of the statute. *Allen County Dep't of Pub. Welfare v. Ball Mem'l Hosp. Ass'n,* 253 Ind. 179, 252 N.E.2d 424, 427 (1969), *cert. denied sub nom. Bibbs v. Illinois,* 398 U.S. 967, 90 S.Ct. 2184, 26 L.Ed.2d 552 (1970); 3 SUTHERLAND, STATUTORY CONSTRUCTION § 57.01, at 2 (5th ed.1992). "Although directory provisions are not intended by the legislature to be disregarded, the seriousness of noncompliance is not considered so great that liability automatically attaches for failure to comply." 1A SUTHERLAND § 25.03, at 449 (5th ed.1993).

Where, as here, the word "shall" appears in a statute, it is generally presumed to be used in its imperative sense. *Lewis v. Board of Sch. Trustees,* 657 N.E.2d 180, 183 (Ind.Ct.App.1995), *trans. denied.* Thus, a statute containing the term "shall" usually carries a mandatory import unless it appears clear from either the context or the purpose of the statute that the legislature intended a different result. *Murray v. Hamilton County Sheriff's Dep't,* 690 N.E.2d 335, 340 (Ind. Ct.App.1997); *Clark v. Kenley,* 646 N.E.2d 76, 78 (Ind.Ct.App.1995), *trans. denied.* In order to determine legislative intent with respect to the word "shall," our supreme court has set forth the following reasoning:

> In construing the statute before us we must be mindful that the intent of the legislature controls. In this situation our judicial function is best discharged by an honest and earnest desire to ascertain and effectuate that intent.... The meaning and intention of the legislature are to be ascertained not only from the phraseology of the statute but also by considering its design, its nature and the consequences that flow from the various interpretations.

*Allen County Dep't of Pub. Welfare,* 252 N.E.2d at 427; *see also Clark,* 646 N.E.2d at 78. The term "shall" has often been held to be directory in cases where the statute fails

---

**8.** The ICRC and INI dispute the precise date on which INI received the ICRC's Notice of Finding, as well as the date on which the ICRC received INI's Notice of Election. We need not resolve

the foregoing disputes, however, because the ICRC concedes that its complaint was untimely filed in any event. (Appellant's brief at 16).

to specify adverse consequences, the provision does not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose. *May v. Department of Natural Resources*, 565 N.E.2d 367, 371 (Ind.Ct.App.1991), *trans. denied; In re Middlefork Watershed Conservancy Dist.*, 508 N.E.2d 574, 577 (Ind.Ct. App.1987); *see* 3 SUTHERLAND, § 57.19, at 47 (the general rule is that if a provision of a statute states a time for performance of an official duty, without any language denying performance after a specified time, it is directory).

Whether a statute's provision that an administrative agency "shall" file a complaint within thirty days of a party's election should be interpreted as mandatory or directory was addressed in *United States v. Tierra Apartments Ltd. Partnership*, 865 F.Supp. 624 (D.Neb.1994). In that case, the United States brought an action to enforce the provisions of the federal Fair Housing Act[9] prohibiting discrimination based upon familial status. The defendants filed a motion for summary judgment arguing that the United States' failure to file its complaint within thirty days of the defendants' election to proceed in federal district court amounted to a jurisdictional defect. *Id.* at 627. In denying the defendants' motion, the court held that the thirty-day time limit set forth in the statute was not jurisdictional or mandatory. In support of this holding, the court cited precedent which reasoned that because the statute did not specify a consequence for untimely filing, the statute should be construed as directory. *Id.* at 628.

Likewise, in *West Virginia Human Rights Comm'n v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996), a case factually similar to the one before us, the West Virginia Human Rights Commission ("Commission") issued a finding of reasonable cause based upon the defendant's alleged housing discrimination. As in the present case, the defendant thereafter elected to try the merits of the complaint in a civil action. The trial court ultimately dismissed the complaint, concluding that the Commission's failure to file the civil action within the statutory thirty-day time period was fatal to its claim. The appellate court reversed, holding that the statute was directory in nature and thus did not automatically bar a belatedly-filed housing discrimination action. *Id.* at 738. In so doing, the court characterized the thirty-day time deadline not as a statute of limitations, but rather as akin to a deadline for removal, whereby an already filed claim could be removed from the administrative process to the trial court. *Id.* at 737–38 n. 3, 740. The court further reasoned that because the complainant held a protected property interest in his housing discrimination claim, due process concerns were implicated, and the Commission's failure to timely file the complaint should not operate to deny the complainant his day in court. *Id.* at 739. Finally, the court found that to construe the statute as imposing a mandate and jurisdictional requirement was "inconsistent with the spirit of the statute." *Id.* at 742. Accordingly, absent a showing that the delay was prejudicial to the rights of the defendant, the Commission was entitled to continue its suit in the trial court.

 We reach the same conclusion as the court in *Garretson*, although for somewhat different reasons. In examining the phraseology of the Act, *see Allen County Dep't of Pub. Welfare*, 252 N.E.2d at 427, we observe that the statute specifies no consequences for the ICRC's failure to file a civil action within thirty days.[10] To the contrary, the nature and design of the Act suggest that the legislature intended to grant the ICRC broad powers in the area of fair housing. As we have already noted, fair housing complainants possess the right to privately enforce the provisions of the Act, so long as they do so within one year of the termination of the alleged discriminatory housing practice. IND.CODE § 22–9.5–7–1. Likewise, the ICRC possesses the right to intervene in a private civil action if it determines, in its sole discretion, that the case is of general public importance. IND.CODE § 22–9.5–7–4. Finally, the

---

9. *See* 42 U.S.C. §§ 3601 to 3631.

10. The Act does specify a consequence for a party's failure to make a timely election, namely

that "the commission shall provide for a hearing on the finding of reasonable cause." IND.CODE § 22–9.5–6–14(a).

ICRC may enforce the Act's provisions by filing a civil action in its own right. IND. CODE § 22–9.5–8.1–1. Thus, the Act permits the ICRC to adjudicate fair housing violations administratively, to institute civil actions either in its own right or upon a party's election, or to intervene in any private action in which the general public interest is implicated. A mandatory construction of IND. CODE § 22–9.5–6–13(a) would foreclose the ICRC from pursuing a belated civil action, while the Act permits it to subsequently participate as a party-intervenor in a private enforcement action. We do not believe the Act's design evinces the legislative intent to impose adverse consequences upon the ICRC for its failure to timely file a civil complaint. Thus, the broad powers accorded to the ICRC by the Act, together with the absence of either explicit or implicit adverse consequences, suggest a directory, rather than a mandatory, reading of IND.CODE § 22–9.5–6–13(a). We further observe that the essence of the Act's purpose is to assure fair housing practices, and the provision requiring the ICRC to file a civil action within thirty days of a party's election does not go to the essence of that statutory purpose. *See* 73 AM. JUR. STATUTES § 18, at 279 (2d ed.1974) ("[i]n many cases, statutory provisions as to the precise time when a thing is to be done are not regarded as of the essence, but are regarded as directory merely.").

Despite our finding that the statute is directory in nature, the thirty-day time limitation set forth in IND.CODE § 22–9.5–6–13(a) nonetheless serves a vital purpose. Although there may be numerous claims of unfair housing practices and subsequent findings of reasonable cause by the ICRC, clearly the legislature did not intend the ICRC to be the exclusive litigator of fair housing violations. As we have already pointed out, the ICRC's statutory authority to bring suit is not a substitute for hiring private counsel to litigate fair housing violations. Stated differently, enforcement of the Act may occur either with or without the intervention of the ICRC. Obviously, the statutory scheme encourages aggrieved parties to submit their claims to the ICRC in order to employ the agency's unique expertise in fair housing law, as well as to avoid clogging trial court dockets with meritless fair housing claims. Toward that end, the one-year period of time for filing a private action "does not include any time during which an administrative hearing under this article is pending with respect to a complaint or finding of reasonable cause under this article based on the discriminatory housing practice." IND.CODE § 22–9.5–7–1(b). The foregoing "tolling" provision encourages screening by the ICRC before a complainant proceeds with a private enforcement action.

■ However, where, as here, the ICRC enters a finding of reasonable cause, a party elects to proceed in a civil action, and the ICRC fails to file the action within thirty days, the one-year period during which a complainant can file a private action is no longer subject to the tolling provision of IND. CODE § 22–9.5–7–1. Clearly the Act's legislative policy is not to place an aggrieved party in a worse position than the party would have been in but for the submission of a complaint to the ICRC. As a result, the provision requiring the ICRC to file a civil action within thirty days of a party's election places all parties on notice that the time for filing a private action is no longer tolled. Consequently, if the ICRC does not file a civil action within thirty days, the aggrieved party can no longer rely on the ICRC to pursue the claim. Rather, the burden shifts to the aggrieved party to bring a private action to enforce his or her rights under the law and to ensure that the right to bring this action is not lost due to the passage of time.

■ To summarize, our examination of IND.CODE § 22–9.5–6–13(a) leads us to conclude that "shall" was used in a directory, rather than a mandatory, sense. Here, the ICRC filed the civil action thirty-seven days after Graves and INI filed their notices of election, and seventy days after Baker's notice of election. Although we do not condone the ICRC's belated filing, the filing substantially complied with IND.CODE § 22–9.5–6–13(a), and there has been no showing that the defendants' substantial rights were violated or that they were prejudiced by the delay. *See Lewis,* 657 N.E.2d at 183 (substantial compliance with a statutory mandate is suffi-

cient if the act of compliance accomplishes the essential purpose of the statute). Accordingly, the ICRC's complaint is sufficient to withstand a T.R. 12(B)(6) motion to dismiss for failure to state a claim.

### Belzer's Status

The ICRC contends the trial court erred in dismissing the complaint filed on Belzer's behalf. According to the ICRC, Belzer qualifies as an "aggrieved party" and thus has standing to assert a claim under the Act. INI and Graves counter, as they did before the trial court, that Belzer is not a proper party to the action because he is not included among the class of individuals who may bring an action for housing discrimination based upon familial status.

The doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power. *Regan v. Uebelhor*, 690 N.E.2d 1222, 1225 (Ind.Ct.App.1998), *trans. denied.* The standing requirement mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation. *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995). An actual dispute involving those harmed is what confers jurisdiction upon the judiciary. *Id.* We have previously explained the doctrine of standing as follows:

> For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.

*Id.* (quoting *City of Indianapolis v. Indiana State Bd. of Tax Comm'rs*, 261 Ind. 635, 308 N.E.2d 868, 870 (1974)). In order to establish standing, a plaintiff must show that he or she has sustained, or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue. *Indiana State Police v. Don's Guns & Galleries*, 674 N.E.2d 565, 570 (Ind.Ct.App.1996) (quoting *Hammes

*v. Brumley*, 659 N.E.2d 1021, 1029–30 (Ind. 1995)), *trans. denied.*

Indiana Code section 22–9.5–1–2 provides in relevant part as follows:

> Under this article, a discriminatory act is committed because of familial status if the act is committed because the person who is the subject of discrimination is:
>
> (1) Pregnant;
>
> (2) Domiciled with an individual younger than eighteen (18) years of age in regard to whom the person:
>
> (A) Is the parent or legal custodian; or
>
> (B) Has the written permission of the parent or legal custodian for domicile with that person; or
>
> (3) In the process of obtaining legal custody of an individual younger than 18 years of age.

In this case, the civil complaint alleges that "[i]n January 1994, plaintiffs Joseph C. Belzer and Theresa Wright and Ms. Wright's daughter, ... a child under age 18, lived together on the south side of Indianapolis[,] Indiana and were looking for a house to rent on the north side of Indianapolis." (R. 10). Although Belzer was domiciled with Wright and Wright's minor daughter, he was not the child's parent or legal custodian, nor was he in the process of obtaining custody. Further, the ICRC presented no evidence that Belzer possessed written permission to be domiciled with the child. Thus, because Belzer satisfies none of the criteria set forth in IND.CODE § 22–9.5–1–2, he does not qualify as a "person who is the subject of discrimination" as that term is defined by the Act.

However, the Act additionally provides that an "aggrieved person" may, not later than one year after the occurrence or termination of an alleged discriminatory housing practice, file a complaint with the ICRC. IND.CODE § 22–9.5–6–1(c). The legislature has defined "aggrieved person" broadly to include *any person* who: (1) claims to have been injured by a discriminatory housing practice; or (2) believes that the person will be injured by a discriminatory housing practice that is about to occur. IND.CODE § 22–9.5–2–2 (emphasis added). Viewing the pleadings in the light most favorable to Bel-

zer, the nonmoving party, *see Ratliff*, 693 N.E.2d at 534, we conclude that the ICRC's civil complaint sufficiently alleges injury by a discriminatory housing practice. Specifically, the complaint states that as a result of the defendants' unlawful practices, Belzer has "incurred inconvenience, indignation, distress and a deprivation of [his] right to rent housing on an equal basis with other persons regardless of [his] familial status." (R. 14). Consequently, although Belzer does not qualify as a "person who is the subject of discrimination," he nonetheless has standing to bring a claim as an "aggrieved person" within the broad meaning of that term.[11] Accordingly, the trial court erred in dismissing him from the ICRC's complaint on this basis.

### Wright's Status

The ICRC contends the trial court erred in dismissing its civil complaint against INI, Graves, and Baker based on the ICRC's failure to properly amend its administrative complaint to add Wright as an aggrieved party.

The record reveals that Belzer initiated the underlying administrative action by filing a complaint with the ICRC on February 7, 1994. On March 24, 1994, the complaint was amended to add INI and Baker as respondents. The complaint was later amended a second time to add Wright as a complainant. According to INI and Graves, the ICRC's civil complaint was properly dismissed because the ICRC never provided them with notice that Wright had been included as a complainant in the administrative action.

Indiana Code section 22–9.5–6–1(e) provides that an administrative complaint concerning a discriminatory housing practice may be amended at any time. Pursuant to IND. ADMIN. CODE tit. 910, r. 2–6–2(g), an amended complaint shall be considered to be made as of the original filing date. The Indiana Administrative Code sets forth the following requirements for amending a complaint:

> Within ten (10) days of filing ... an amended complaint under subsection (g), the ICRC will serve a notice on each respondent by certified mail or by personal service. A person who is not named as a respondent in a complaint, but who is identified in the course of the investigation under section 4 of this rule as a person who is alleged to be engaged, to have engaged, or to be about to engage in the discriminatory housing practice upon which the complaint is based may be joined as an additional or substitute respondent by service of a notice on the person under this subsection within ten (10) days of the identification.

IND. ADMIN. CODE tit. 910, r. 2–6–2(i).

In this case, although the relevant statutory and administrative provisions allow for liberal amendment of administrative complaints, the Administrative Code sets forth specific guidelines for providing notice of such amendments. The record in this case contains a form adding Wright as a party to the administrative complaint;[12] however, it is undisputed that no notice of the foregoing amendment was ever provided to any of the respondents. (Supp. R. 53). Wright did not appear at the conciliation conference in which Belzer, INI, Graves, and Baker participated. Further, she was not included on the service list during the pendency of the administrative complaint, and was not referenced in any way in the ICRC's Notice of Finding. Rather, Wright was first named as a complainant upon the eventual filing of the civil claim.

Pursuant to IND.CODE § 22–9.5–6–1(c), "[a]n aggrieved party may, not later than one (1) year after an alleged discriminatory hous-

---

11. We note that courts interpreting the federal Fair Housing Act have determined that parties in analogous cases have standing to pursue claims of unfair housing practices. *See, e.g., Mountain Side Mobile Estates Partnership v. Secretary of Hous. and Urban Dev.*, 56 F.3d 1243, 1249 (10th Cir.1995) (holding that unrelated adult residing with family in mobile home park had standing as "aggrieved person" to challenge housing discrimination based on familial status); *Secretary of Hous. and Urban Dev. v. Blackwell*, 908 F.2d 864, 873 (11th Cir.1990) (holding that white tenants to whom vendor leased house after refusing to close purchase with black purchasers were "aggrieved parties" entitled to damages for economic loss under Fair Housing Act).

12. The amendment does not reflect the date of signing, and no file stamp appears on the document. (R. 20).

ing practice has occurred or terminated, whichever is later, file a complaint with the commission alleging the discriminatory housing practice." Under IND.CODE § 22–9.5–7–1(b), the one-year period within which an aggrieved party may file a private enforcement action "does not include any time during which an administrative hearing under this article is pending with respect to a complaint or finding of reasonable cause under this article based on the discriminatory housing practice." In this case, the alleged discriminatory action terminated on or about March 31, 1994. (R. 11). According to the ICRC, Wright was added as a complainant on October 8, 1994, within the one-year time limit set forth in IND.CODE § 22–9.5–6–1(c). However, the time for Wright to file a private enforcement action would be tolled only to the extent the ICRC complied with applicable administrative rules. Here, the ICRC did not comply with the administrative provisions governing amendments to administrative complaints and thus the time period for filing was not tolled as to Wright. Consequently, because the time period within which Wright could bring a private enforcement action had passed, she likewise cannot be included as a complainant in the ICRC's civil complaint. Accordingly, the trial court properly dismissed the ICRC's civil action as to complainant Wright.[13]

Although neither party specifically addresses the issue, we observe that the ICRC brought its civil complaint "in its own right and on behalf of Joseph C. Belzer and Theresa Wright." (R. 8). As we have already discussed, the ICRC possesses the right to enforce the Act's provisions through the filing of an action in its own right. *See* IND. CODE § 22–9.5–8.1–1. In this case, the record is unclear, but it appears that the trial court dismissed the defendants entirely from the action without considering Count II of the ICRC's civil complaint. That count tracks the language of IND.CODE § 22–9.5–8.1–1 by alleging that the acts described in the complaint constitute "[a] pattern or practice by the defendant of resistance to the full enjoyment of rights secured by the Indiana Fair Housing Act" and "[a] denial to persons with children of rights granted by the Indiana Fair Housing Act ... which denial raises an issue of general public importance." (R. 14). Consequently, although the trial court correctly dismissed the action as to Wright, the action must remain pending with respect to the claims brought by the ICRC on its own behalf and on behalf of Belzer. Accordingly, we affirm the trial court's order dismissing Wright from the action. However, we reverse the trial court's dismissal of Belzer and the ICRC from the action and remand with instructions that the trial court reinstate the action with respect to claims brought by the ICRC on Belzer's behalf and on the ICRC's own behalf.

RUCKER and DARDEN, JJ., concur.

---

13. Our disposition of this issue obviates the need to address the ICRC's additional contentions that its complaint filed on behalf of Wright was improperly dismissed.